IN THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA,
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| V. | ) | 2:04 CR 80 RL |
| | ) | The Honorable Rudy Lozano |
| CHARLES TANNER, | ) | |
| Defendant. | ) | |

*DEFENDANT CHARLES TANNER'S SENTENCING MEMORANDUM: PART I*

Defendant CHARLES TANNER, by his attorney, ANDREA E. GAMBINO, respectfully requests that the Court reject the findings of the presentence investigation report because they are inconsistent with the testimony at trial. The advisory sentencing guidelines in this case produce a suggested range that is excessive – far more than necessary to serve the interests of justice in this case. In view of Mr. Tanner's lack of criminal history, his long track record of dedication to boxing – a sport that requires tremendous self-discipline and rigorous training, his role as a provider for his family, and the promise he still has as a young man, Mr. Tanner requests a sentence at the mandatory minimum in this case – a sentence that is still far greater than necessary to serve the purposes of sentencing.

1

I. The Drug Quantity assessed against Mr. Tanner is not supported by the evidence at trial.

    A. The evidence does not support a finding that Charles Tanner was involved in the drug conspiracy beginning in 1993.

Charles Tanner was born in 1980. PSI cover page. In 1993, Charles Tanner was 13 years old. There is no basis in fact for finding that Charles Tanner joined a conspiracy with anyone to distribute drugs when he was 13 years old. At trial none of the government's witnesses established a connection between Charles and Lance Foster with respect to drug dealing, apart from vague allegations that Foster [also known as "Smurf"] was one of Charles' "guys". The controlled buys with Lance Foster involved Warren Moore and did not involve Charles Tanner. No evidence was introduced that Charles Tanner received any of the profits from Moore's sales to Foster, nor that Tanner had anything to do with the transactions between Moore and Foster. No conspiracy between the two was supported by the evidence at trial. Solis' testimony was that Foster was Charles Tanner's best friend. V.4-234.

Testimony at trial established a buyer-seller relationship between Charles Tanner and Erbey Solis. Charles' own statements to Special Agent Allen suggested that he was a middle man between Solis and his brothers for the controlled buy of the 15 sham kilograms of cocaine, but no corroborative evidence was introduced to support such a finding beyond a reasonable doubt. Solis testified at trial about three transactions prior to the 15 kilogram deal:

one that took place at the Star Plaza, one at a Marathon gas station in Hammond, and one at an unspecified location in Gary, Indiana, for one kilogram. At trial, Solis was unable to remember the quantities involved in the other transactions. V.4-219-220.

Erbey Solis told investigators that he has known Charles Tanner for approximately 8 years, but he "just recently started dealing drugs with him." PSI at 5. Solis knew him as "Duke" and "Little Duke", not as "cuz" or "little dude". V.4-921. Solis did not testify about any deals with Tanner before 2004. V.4-230. In contrast to his trial testimony, according to the PSI, Solis claimed to have dealt with Tanner on five occasions: (1) the first involved a five kilogram transaction; (2) the second involved a 10 kilogram transaction; (3) the third involved 10 kilograms of cocaine; (4) the fourth involved 11 kilograms of cocaine; and (5) the fifth sale also involved a front of 11 kilograms. Solis alleges a total of 47 kilograms of cocaine, all of which occurred in 2004. PSI at 6. Solis did not testify to these amounts at trial. He could not remember the amounts except for the final controlled buy and a previous 1 kilo deal. V.4-1013. Agent Allen testified that Charles admitted to 3-5 kilo deals on five occasions and that this was consistent with his investigation. V.5-131. Solis was one man show – not a member of any gang. V.4, 183. V.4-230. Lance Foster was Duke's best friend - not directing any drug deals. V.4-234.

The transaction for which Mr. Tanner was arrested involved 15 kilograms

of counterfeit cocaine. This transaction was negotiated over a period of days and involved a "front", meaning that Mr. Tanner was not required to pay for the drugs at the time of delivery. PSI at 6. Again this transaction took place in September of 2004.

Solis' statement that Tanner would try to purchase 25-50 kilograms per week [PSI 7] is unsubstantiated by any objective evidence that Charles Tanner was able to procure these amounts. The single controlled buy was only for 15 and Tanner was unable to pay for that quantity at all, and still allegedly owed Solis $3900 from a prior deal. If Charles had been trafficking in 25-50 kilograms per week, he would not have had any difficulty paying for a 15 kilogram transaction. There is no corroboration for this statement other than Solis' allegations.

Mere presence when dealing with brothers is not basis for attributing membership in conspiracy. Solis had buyer-seller relationship with the Tanners, and was not part of the "Renegades" or part of a conspiracy. V.4-944. Solis testified that he was unable to get 25-50 kilograms of cocaine per week. V.4-950. Solis also testified that he did not do any cocaine sales with Charles until 2004. V.4-959.

Solis' allegations are inconsistent with the conversation between Warren Moore and Lashawn Tanner regarding obtaining **one-half** kilo of cocaine from unidentified people in St. Louis. PSI 7. Again there is no objective evidence to

corroborate the truth of the statement.

> B. Charles Tanner's alleged statements to the FBI do not support the quantity finding in the PSI.

According to Agent Allen, who believed Charles post-arrest statements, Charles became involved in drug sales while he was injured and not boxing. V.4-282. He bought 10-15 kilogram quantities from someone known as Renee or Papi. He bought 5-10 kilos from Rocky Martinez. V.4-270. Although he signed consent to search forms for his phones and car, V.4-273, no traps, drugs, or money were found. He claimed to have dealt with Erbey Solis about 5 times for 3-4 kilograms. V.4-276. He made no mention of Warren Moore. This testimony also is consistent with Agent Allen's claim that the initial investigation focused on Tanner's brothers and that he was not a wire-tap subject in the Spring of 2003. V.5-79.

II. Evidence at trial did not support a finding that Mr. Tanner possessed a weapon in connection with a drug offense.

The Seventh Circuit has held that "[t]o support an enhancement under § 2D1.1(b)(1), the government bears the burden of proving by a preponderance of the evidence that a gun was possessed during the commission of the offense or relevant conduct." *United States v. Womack,* 496 F.3d 791, 798 (7th Cir. 2007), *citing*, *United States v. Olson,* 450 F.3d 655, 684 (7th Cir. 2006). In *Womack*, the government met its burden by showing that Womack had a gun in his possession at his home, where he received and sold cocaine, and where he also

had a significant stash of money bundled in various denominations. Womack offered no contrary evidence. Other cases also require the presence of drugs and drug dealing where the weapon is found, in order to support this enhancement. *See, e.g., United States v. Artley,* 489 F.3d 813, 819 (7th Cir. 2007)(possession of a dangerous weapon in a place where drugs were present); *United States v. Luster,* 480 F.3d 551, 558 (7th Cir. 2007)(one codefendant stored drugs and firearms at his music studio, one codefendant carried a gun during the conspiracy).

    A.    The New Year's Eve incident was prior to Charles Tanner's involvement in drug dealing and was not related to any drug offense.

Officer Hornyak went to 2107 West 8th Avenue because he and his partner heard shots fired, but determined that they were more than "normal" for New Year's Eve. No individuals were identified or associated with any of the confiscated weapons and no one testified that Mr. Tanner was present at the time. The activity throughout the neighborhood on New Years' Eve was celebration of the holiday. No evidence was introduced that tied the weapons to drug dealing or to any specific individual at trial.

Warren Moore's uncorroborated statement is only evidence that Tanner was present. V.3-641. Moore's uncorroborated statement that Tanner fired an AR-15 and a Glock 9mm on that night is the only evidence of Tanner's firing a weapon. V.3-656. Regardless of whether he fired it on that night, the relevant

6

question is whether the firearm was possessed in connection with a drug offense.  Simply stating that guns are tools of the trade does not advance the government's cause and mean that any gun introduced into evidence was possessed by Mr. Tanner in connection with a drug offense.

Moore contradicted himself and the police officers' testimony by saying that only Tony Murphy was in the yard shooting the "AK" when the police arrived.  He ran.  V.3-707.  He also contradicted the police by saying that no one was told to lay down in the backyard, V.3-709, rather, they were permitted to leave.  Moore also admitted that on New Year's Eve the possession and shooting of guns had nothing to do with drug dealing.  V.3-795

No evidence introduced to prove that Charles Tanner had joined a conspiracy at that time. V.3-653.  In contrast, Moore testified that Lashawn Tanner and Larry Scott were members of the conspiracy and were selling drugs at that time. V.-3-654.  Similarly, testimony that Moore saw Tanner carry a gun on other occasions does not provide a link between possessing a gun and transacting a drug deal.

    B.    No guns were found in Mr. Tanner's possession, in his residence, or in his vehicles.

Detective Frank Carrillo testified on cross-examination that Mr. Tanner had no weapons in his possession at the time he was arrested, nor did he observe any weapons during the course of the transaction.  Ex. Tr. V. 2-442.  No testimony was introduced by any agent or officer that weapons were found

7

in Mr. Tanner's residence, on his person, or in his vehicles.

The weapons seized in 1999 were seized from Charles' mother's house, were not identified by the police to belong to any individual, and were never tested for prints or firing to determine whether Charles – or anyone else – had handled the weapons. In contrast to Mr. Tanner, at the time of his arrest, Mr. Solis was in possession of a weapon. Ex. Tr. V.2-449.

C. Warren Moore's uncorroborated testimony is not reliable

Moore received a sentencing break and the government paid his rent, electric bill, water bill, cell phone bill, car note. Tr. V.2-474. He received a total of $12,000 in return for his cooperation. In addition, he admitted to having lied to agents in his first interrogation. V.2-483.

He testified to having sold guns to Charles Tanner, but not until 2003. V.2-584-6. Moore also testified to seeing the guns he allegedly sold to Tanner in other people's hands. He provided no specific dates or occasions upon which he saw Charles in possession of a weapon during a drug transaction. V.2-593-4. There was simply no evidence to back up his claims. Similarly, he testified to "seeing" Tanner around drugs beginning in 1999-2000, V.2-579, but he could not remember a specific date or instance. The drug transactions to which he testified were all in 2003-2004 and concerned ½ to 1 kilogram quantities of cocaine and some marijuana. V2-531, 580-583.

8

III.   The introduction of gang evidence was highly prejudicial and irrelevant to conspiracy charge.

The First Amendment protects an individual's right to join groups and associate with others holding similar beliefs. *Aptheker v. Secretary of State,* 378 U.S. 500, 507 (1964); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 (1958). Gang membership, too, is protected by the First Amendment and its introduction into court proceedings is not permitted where it is not relevant to prove any contested issue. *Dawson v. Delaware*, 503 U.S. 159 (1992)(error to use gang membership as aggravating factor in capital sentencing). *See also, United States v. Avila,* 465 F.3d 796 (7th Cir. 2006)(distinguishing between gang membership and membership in conspiracy).

The Seventh Circuit, in *United States v. Avila,* 465 F.3d 796, 798 (7th Cir. 2006), has cautioned against confusing gang membership with membership in a conspiracy, finding that "to join a conspiracy . . . is to join an agreement, rather than a group." *See also, United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir. 1991); *United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998).

In this case, being a Renegade was not the same as being part of a drug conspiracy. Not all those charged with conspiracy were Renegades and testimony by Moore and Solis indicated that the "Renegades" did not have any particular organization or hierarchy. The government's witnesses classified the Renegades as "freelancers". Each person sought the best deal for himself

9

without regard to whether suppliers, buyers, or sellers were members of the "Renegades." V.3-695-698.

IV. Evidence at trial did not support a finding that Charles was a leader/organizer of the charged conspiracy.

Charles Tanner did not recruit individuals to sell drugs for him, he did not direct the activities of other people, he engaged in particular sales with as a buyer or seller with Warren Moore and Erbey Solis for a limited period of time during 2003-2004. There was no organizational hierarchy according to the government's witnesses. No evidence was produced that Charles received a share of anyone else's sales, or that he received a greater portion of the sales of anyone else's drugs.

Agent Allen testified that he was not even a part of the investigation of the Tanner brothers until after the Spring of 2003. His phone was not monitored and he was not recorded on any of the monitored conversations conducted by his brothers. There is insufficient evidence to support a finding that Charles Tanner was a leader or organizer of anyone, let alone a large conspiracy.

V. An acceptance of responsibility reduction is appropriate in this case.

This is the unusual case in which it is not inconsistent to accord Mr. Tanner a two-level reduction for acceptance of responsibility, because Mr.

Tanner's counsel attempted[1] to present a legal defense –entrapment – that did not involve Mr. Tanner denying responsibility for the offense. Mr. Tanner did not challenge the statements that he made to law enforcement after his arrest, before he was represented by counsel. The two agents who took Mr. Tanner's statement testified at trial that his statements were consistent with their investigation, that they believed he was telling the truth, and that it was obviously painful for him to do so because of the involvement of his brothers.

Mr. Tanner did not testify at trial. Nor did his lawyer present any evidence that was inconsistent with Mr. Tanner's acceptance of responsibility for his own actions. In fact, the evidence at trial indicated that Mr. Tanner wanted to co-operate with the agents and pursue a resolution to his case that did not involve proceeding to trial. It is unclear from the record why the case did proceed to trial in view of the testimony that Mr. Tanner wished to cooperate on his own behalf and that agents were interested in having him do so.

In his defense case, Mr. Tanner's counsel did not provide witnesses who testified inconsistently with Mr. Tanner's previous statements. In fact, the

---

[1]Counsel for Mr. Tanner requested an entrapment instruction which the Court initially denied, but gave counsel the weekend to support his request with evidence in the record. V.5-188. Counsel did not provide a transcript to support his position, so the Court did not allow the entrapment instruction. V.6-7.

witnesses who testified on Mr. Tanner's behalf, with two exceptions,[2] were character witnesses. Pastor Larry Shelby, Sr., testified that Mr. Tanner began attending his church in 2002, was known in the community for his boxing prowess, and had a positive influence on the young people in the community, and brought them into the church with him. V.5-115. The Pastor testified that he was on the way to being a good role model for the younger people. V.5-121. Dena Holland, too, attested to Mr. Tanner's character, saying that she had known him since he was a child and that he and her children had grown up together. V.5-138-139. Thomas Lewis testified that he was Mr. Tanner's boxing promoter and that he was responsible for making Mr. Tanner a professional boxer when Mr. Tanner turned 18 years old. V.5-128. Mr. Tanner had a 10-0 record as a professional boxer when Mr. Lewis stopped promoting him. V.5-132.

WHEREFORE, Charles Tanner respectfully requests that this Court reject the recommendations of the Presentence Investigation Report as inconsistent with the testimony at trial. The appropriate advisory guideline range in this case is 151-188 months, based on an offense level of 36, reduced by 2 levels for acceptance of responsibility, yielding an adjusted level of 34, in a criminal history category of I.

---

[2]Warren Moore's brother and a former Gary Police Officer testified about Warren Moore's reputation for being untruthful. Their testimony was offered to impeach witness Moore's testimony. V.5-141, 148.

DATE:      April 3, 2008           Respectfully submitted,

                                    By:    s/Andréa E. Gambino
                                           Attorney for Charles Tanner

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 926
Chicago, Illinois 60604
(312) 322-0014

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

David J. Nozick, Esq.
Assistant United States Attorney

and I hereby certify that I have mailed by United State Postal Service, facsimile, or hand-delivery the document to the following non-CM/ECF participants:

N/A.

DATE: April 4, 2008        Respectfully submitted,

                                          By:   s/Andréa E. Gambino
                                                    Attorney for Charles Tanner

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 926
Chicago, Illinois 60604
(312)322-0014