USA v Tanner.txt

```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
 2                       HAMMOND DIVISION

 3

 4   United States of America,

 5            Plaintiff,

 6        vs.                          2:04-CR-80

 7

 8   Charles Tanner,

 9            Defendant.

10

11

12

13

14                      APRIL 3, 2008

15              TRANSCRIPT OF SENTENCING HEARING

16              BEFORE THE HONORABLE RUDY LOZANO

17                 UNITED STATES DISTRICT JUDGE

18

19

20   Court Reporter:          Richard D. Ehrlich, RMR, CRR
                              Official Court Reporter
21                            United States District Court
                              5400 Federal Plaza, Suite 4082
22                            Hammond, IN 46320
                              (219) 852-6557
23

24   Proceedings reported by stenotype.  Transcript produced by

25   Computer-aided transcription.
```

```
 1   A P P E A R A N C E S:

 2
```

3

4    FOR THE GOVERNMENT:

5            David J. Nozick, Esquire
             Jacqueline L. Jacobs, Esquire
6            Assistant United States Attorneys
             5400 Federal Plaza, Suite1500
7            Hammond, IN    46320
             (219) 937-5655

8

9

10   FOR THE DEFENDANT:

11           Andrea E. Gambino, Esquire
             Law Offices of Andrea E. Gambino
12           53 W. Jackson Boulevard, Suite 926
             Chicago, IL  60604
13           (312) 322-0014

14

15

16   The defendant, Charles Tanner, present in person.

17

18

19

20

21

22

23

24

25

                                        Page        3

1           THE COURT:  This is the case of The United States of

2    America v. Charles Tanner.  Hammond Criminal Number 2:04-CR-80.

3        The defendant is present, in person, and with his

4    attorney, Ms. Andrea Gambino.

5        The Government is represented by its Assistant United

6    States Attorney, Mr. David Nozick and Ms. Jackie Jacobs.

7        The Court's probation office is represented by its
                        Page 2

8     probation officer, Ms. Belinda Paige.

9         Counsel, we are here today for a sentencing.  Before

10    starting the sentencing, I want to make a record of what has

11    transpired in the last few hours.  About 1:00 I received a fax

12    with a sentencing memorandum filed by the defendant.  That

13    memorandum is 15 pages in length.  It contains numerous

14    citations to the transcript as well as citations of law as well

15    as issues that I have preliminarily found to be non-existent as

16    the original objections in this case.

17         I have continued this matter numerous times at the

18    defendant's request.  In fact, the last time this Court was

19    frustrated because I want to see that the defendant have this

20    case move along; that I called the defendant up here in open

21    court to ask him whether or not he was happy and whether he was

22    agreeable to a continuance.  At no time did I ever receive, to

23    the best of my knowledge, a motion asking to expand on the

24    issues.  The only thing that I can have from recollection that

25    the defendant talked about filing was a memorandum on 3553(a)

1     issues on sentencing.  The memorandum that I received today

2     talks about whether he should get acceptance of responsibility,

3     which was not an issue on the original presentence report from

4     the probation department.  It talks about whether there is a

5     conspiracy or is not a conspiracy and several other matters

6     which I have not really even had an opportunity to go through

7     in any detail.

8         I find that it's very unfair to this Court at the 11th

9     hour to drop a memorandum on the Court and expect the Court to

10    be able to digest it and review the citations and the

11    transcript pages and go through the record.

12          I was also promised by counsel the last time that there
13     would be no more requests for continuances, and that this Court
14     would have no further problems with counsel in this matter.
15          I believe, and I haven't had an opportunity to go back
16     through the transcript, that at the time the jury verdict came
17     in, I ordered the attorneys to meet with probation and set out
18     all of their objections, and I wanted it done on a timely
19     basis.
20          I advised counsel that failure to do this would either be
21     a waiver and would also possibly subject him to sanctions.
22          I received a presentence report in this case.  It appears
23     to be August 14th of the year 2007, and the date report was
24     revised was August 7th.  I do believe it was August 14th,
25     and where the objections that are noted, the probation officer,

1     I believe, wrote, As the Court is aware, this case has been
2     continued for several months due to the defendant changing his
3     attorney after his conviction.  As such, many months have been
4     utilized by the defendant to prepare the following objections.
5     These objections are firm.  They identify three areas:  Drug
6     quantity, drug gun enhancement, and role.
7          Subsequent to that I went through the objections and I
8     went through the transcript, and I prepared a dialogue with
9     regards to all of the objections in this matter.  I will also
10     note that the conviction in this case was on November 6th of
11     the year 2006.  This Court has not found good reason why this
12     delay, exorbitant delay, was necessary.  This Court has not
13     found, at least right now, any reason where there has been a
14     request to expand the issues, and I can't help but believe that
15     if this case were before the Seventh Circuit Court of Appeals,
16     they would not stand for attorneys coming in at the 11th hour

17  and changing the issues of appeal.  I don't think that this

18  Court should be dealt any less respectfully, and I do not find

19  it to be respectful at this point; and to say the least, I am

20  very disappointed.

21      I am reserving the right to have a hearing on this matter

22  later as to why sanctions should not be given in this case.

23  This Court has spent numerous hours preparing for every one of

24  the sentencing hearings only to be found at the last minute

25  that it is continued.  That is a waste of judicial resources,

Page     6

1  and, again, it's also disrespectful to the Court.

2      I intend to go forward with today's sentencing on the

3  issues as they are set out in the probation report.  Do I make

4  myself understood?

5          MR. NOZICK:  Yes, Your Honor.

6          MS. GAMBINO:  Yes, Your Honor.

7          THE COURT:  I had my court reporter do a transcript

8  of the last hearing that I had with Mr. Tanner up here when I

9  was asking him about whether he had any objection to the

10  continuance.  There was not even a hint during that hearing

11  that the issues were going to be changed or that they wanted to

12  expand on them.

13      Mr. Tanner, on the 6th day of November 2006, the jury

14  returned a verdict finding you guilty of Counts Two and Three

15  of the superceding indictment, and this Court adjudged you

16  guilty of those offenses.

17      On the 14th day of August of the year 2007, I received a

18  written presentence report together with an addendum setting

19  forth any objections counsel have made that have to be resolved

20  together with the probation officer's comments therein from the

21  probation office, and I have studied that report and the

22  addendum.

23      Counsel, I will also add to the comments that I made for

24  the record earlier that counsel was 20 minutes late before

25  arriving here for this sentencing hearing today.

1      Counsel, to the best of my knowledge, I have not received

2  any letters from relatives, friends, or coworkers.  Do you know

3  of any?

4          MS. GAMBINO:  At this time, no, Your Honor.

5          THE COURT:  Pardon?

6          MS. GAMBINO:  No.

7          THE COURT:  Mr. Nozick?

8          MR. NOZICK:  No, Your Honor.

9          THE COURT:  Ms. Gambino, did both you and your client

10  receive and review a copy of the presentence investigation

11  report and the addendum setting forth any objections counsel

12  have made that have to be resolved at this hearing before the

13  sentencing hearing?

14          MS. GAMBINO:  Your Honor, before I respond to your

15  question, I think that it's my duty to say two things:  First

16  of all, I take full responsibility for not being prepared as I

17  have explained to you on the last time that we met.  I have had

18  some personal, mental, and physical health issues that I've

19  been dealing with, and so I have been behind in my work.

20      Now, I don't want to risk Mr. Tanner suffering because of

21  my inability to comply with your orders.  So I would move to

22  either withdraw and to go through with whatever sanction

23  hearing that you need to have to allow Mr. Tanner the

24  opportunity to have his sentencing that he deserves.  He is

25  facing a life sentence, and I am not completed with the work

1  that I need to do on his behalf.  I do not want to see him go

2  into sentencing unprepared.

3          THE COURT:  Are you telling me, Ms. Gambino, that

4  you're still not prepared for today's hearing?

5          MS. GAMBINO:  Your Honor, I would go forward with the

6  hearing if you ordered me to do so, but I want Mr. Tanner to

7  have the best opportunity that he can have.

8          THE COURT:  Ms. Gambino, don't you believe that two

9  years is being more than fair with the defendant?

10         MS. GAMBINO:  Your Honor, there have been a number of

11 reasons for that delay, some of them, indeed most of them, have

12 been my request because I have not had all of the transcripts

13 because it's taken me a long time to get through the

14 transcripts.  I did not try the case, and I was not privy to

15 any of the pretrial or anything like that.

16         THE COURT:  Ms. Gambino, you have been a practicing

17 lawyer for how long?

18         MS. GAMBINO:  For 14 years, Your Honor.

19         THE COURT:  And you realize you have ethical

20 obligations to the Court?

21         MS. GAMBINO:  Yes, I do.

22         THE COURT:  If you are not able to prepare for a

23 case, don't you have an obligation to advise the Court with

24 sufficient time?

25         MS. GAMBINO:  Yes, I do, Your Honor.

1          THE COURT:  And when you tell the Court that I need

2  one more continuance, and there will be no question that I'll

3  be ready the very next time, don't you think this Court can

4  rely on it?

5      MS. GAMBINO:  Yes, Your Honor.

6      THE COURT:  And don't you believe, Ms. Gambino, that

7  a defendant has a right to an attorney of his choice?

8      MS. GAMBINO:  Yes, he does.

9      THE COURT:  And if he's advised of some of the delays

10  that occur, that he can do that if he so desires to continue

11  with that attorney?

12      MS. GAMBINO:  That's correct, Your Honor.

13      THE COURT:  Didn't I advise the defendant at the last

14  hearing, and I don't have the date on that.  Hold on a minute.

15  I can probably give it to you.

16      No, I don't have it front of me right now.

17      THE CLERK:  February 14th, Your Honor.

18      THE COURT:  February 14th, regarding your

19  requesting a continuance, regarding whether he was satisfied

20  with your services in this case?

21      MS. GAMBINO:  Yes, Your Honor.

22      THE COURT:  Counsel, otherwise can't this case go on

23  to infinity by your continuing to come in and say, I'm not

24  prepared?  I can't be ready, or by him saying I want a

25  different lawyer?

1      MS. GAMBINO:  No, Your Honor.  It doesn't go on to

2  infinity.

3      THE COURT:  Well, conviction is in 2006.  Pretty soon

4  it'll be able to claim Social Security.  Don't you think that

5  that's a long time between the date of conviction and

6  sentencing?

7      MS. GAMBINO:  It is a long time, Your Honor.  I

8   acknowledge that.  It was a large case, and also it's a lot of

9   time that he's facing.  The Government is asking this Court,

10  and the probation officer has recommended, that you send this

11  man to prison for the rest of his life.  And he has no prior

12  convictions.  And I have been diligently going through this

13  record to make sure I can get absolutely everything I can out

14  of it.

15          THE COURT:  Ms. Gambino, you knew that it was a case,

16  because of the quantities that the jury found, I'm not saying

17  you agree with them, that he could be facing life imprisonment?

18          MS. GAMBINO:  Yes, sir.

19          THE COURT:  And you knew the responsibility that you

20  had with a case of this magnitude?

21          MS. GAMBINO:  Yes.  And I've been doing the best that

22  I can under the circumstances of my life and my practice.

23          THE COURT:  Don't you have an obligation to the Court

24  and to your client then to ask to withdraw?

25          MS. GAMBINO:  I do, and I am doing that.

Page     11

1           THE COURT:  On the day of sentencing after this Court

2   has advised you that it is not going to expand the issues in

3   this case.

4           MS. GAMBINO:  Your Honor, I was not aware that you

5   could not bring up new issues after you had gone through and

6   gotten new information.

7       At the time that I prepared --

8           THE COURT:  Is that what you do in Chicago, Ms.

9   Gambino?  Do you go in to argue a case, and then if you decide

10  there's new issues all of a sudden bring them up?

11          MS. GAMBINO:  Your Honor, it's my duty to bring up

12  issues as I find them, and I did not have at my access the full

13  transcript at the time I did these objections.

14      THE COURT:  How long have you had the transcript?

15      MS. GAMBINO:  I've had the full transcript since the

16  beginning of the year.

17      THE COURT:  Don't you believe that three months,

18  maybe even four, is more than enough time to read that

19  transcript?  I mean, I wasn't very fast, Ms. Gambino, when I

20  practiced law, but I wasn't that slow.

21      MS. GAMBINO:  Your Honor, ordinarily I agree with you

22  that that is sufficient time, but it has not been sufficient

23  time for me, and I have now accomplished that and filed this

24  memorandum and would like to be able to put on character

25  witnesses for Mr. Tanner.

Page    12

1      THE COURT:  I have no problem with you putting on

2  character witnesses.  That's fine.  Are they here?

3      MS. GAMBINO:  But I do not --

4      THE COURT:  Are they here?

5      MS. GAMBINO:  I do not think that it's fair --

6      THE COURT:  Are your character witnesses here, Ms.

7  Gambino?

8      MS. GAMBINO:  Not all of the witness that Mr. Tanner

9  would like to have, no.

10      THE COURT:  Again, Ms. Gambino, don't you have an

11  obligation to be ready for Court hearings?

12      If you go up to Chicago at the Court of Appeals, and you

13  decide halfway through argument that you have other issues or

14  that you want additional evidence brought in on the transcript,

15  do you tell the Court of Appeals, I want to change the rules

16  under which we're operating?

17          MS. GAMBINO:  No, Your Honor.

18          THE COURT:  I have a very difficult time, Ms.

19    Gambino, understanding how you handled this case.

20          MS. GAMBINO:  I appreciate that, Your Honor.  I have

21    had a difficult time with it myself.

22          THE COURT:  And I think that I have been more than

23    fair continuing this matter over and over again and receiving

24    promises from you that, you know, this was the last time.

25          MS. GAMBINO:  I understand that, Your Honor, and I'm

1    fully prepared to take the consequences of that myself.  I'm

2    just asking that you not visit them upon Mr. Tanner by

3    proceeding forward at this time.

4          THE COURT:  Ms. Gambino, doesn't he have a

5    responsibility when he picks his attorney to be responsible for

6    the actions taken provided by that attorney?

7          MS. GAMBINO:  Your Honor, he can't be responsible

8    for -- no, I think he cannot be responsible for everything that

9    I am responsible for.

10          THE COURT:  Mr. Nozick, what's the Government's

11    position?

12          MR. NOZICK:  One moment, Your Honor.

13      Your Honor, we are ready to proceed with the sentencing.

14    I will defer to the Court.  If you're ready to sentence him and

15    deny her motion to continue it, then we are ready to proceed;

16    if you are going to allow her to withdraw from the case, we'll

17    be ready at the date you give us.

18          THE COURT:  I have a very difficult time, Ms.

19    Gambino.  I don't understand why this Court should be put on

20    over and over again.

21    I need one more continuance this last time.

22    And I hear the same story over and over again.  If you

23  were a new attorney, I would be more understanding, but I think

24  you, yourself, had said you practiced for 14 years, and you've

25  done substantial criminal cases before.  You knew that this

1  case was a case that had been tried and lost, and you knew what

2  he was facing, and I think you know your obligations ethically

3  to this Court.

4    MS. GAMBINO:  Yes, Your Honor, and I'm doing the best

5  that I can to meet them, and I know that that has not been

6  satisfactory.

7    THE COURT:  I may be faced with a 2255, but somehow

8  I've got to send a message to you and to attorneys they can't

9  do this.  It's not proper.

10    MS. GAMBINO:  I have that message loud and clear,

11  Your Honor.

12    THE COURT:  Well, that's what you told me the last

13  time and the time before that and the time before that and the

14  time before that.

15    MS. GAMBINO:  Your Honor, you have my memorandum.  I

16  am only asking you that you not take your disappointment and

17  your distress with me into consideration when you're dealing

18  with Mr. Tanner.  It's not his responsibility, and I am fully

19  prepared to accept mine.

20    THE COURT:  When he chooses an attorney, doesn't he

21  agree to that attorney?

22    MS. GAMBINO:  Yes, but he did not agree to the

23  circumstances of my life, and he shouldn't have to suffer for

24  them.

25    THE COURT:  Well, I'll tell you what, Ms. Gambino.

1   I'm not going to let you get this memorandum in because you

2   haven't convinced me of that, but I'll let you give me a

3   memorandum with regards to why he should not be bound by your

4   actions and why that is not a sanctionable event towards you

5   because I am not convinced that he's not responsible.

6        He had another attorney.  He discharged him.  That's his

7   right.  And he hired a new attorney.  And there have been

8   numerous continuances.  And I even went out of my way the last

9   time to hold a hearing to make sure that he understood what was

10  going on, and he said he wanted you.  You were his attorney.

11  You were the attorney of choice.

12       Again, Ms. Gambino, I have a responsibility to numerous

13  people.  I have hundreds of cases, and I have to give them

14  attention.  If every attorney practiced the way you've been

15  practicing on this case, I wouldn't be able to do anything in

16  my court.  And I think I have been more than fair with you by

17  continuing this matter and telling you you've got to get ready

18  and you've got to be ready to proceed.

19       This case needs closure, and Mr. Tanner has a right to

20  appeal his conviction and/or sentence in this case, and he has

21  a right to get to the Court of Appeals and/or the Supreme Court

22  if it goes that far.  And so far this hasn't been done in this

23  case.  And I don't take it lightly, Ms. Gambino, because,

24  again, I understand that there might be other motions, but I

25  can't let the attorneys continue to disregard and be

1   disrespectful to this Court or to their clients.

2            MS. GAMBINO:  Your Honor, it's not my intention to be

3  disrespectful to anybody.

4        THE COURT:  Well, Ms. Gambino, I know that numerous

5  times you were not prepared.  You came in at the 11th hour

6  and say, I need a continuance.  I'm not ready to go.

7        Now, I only practiced for 22 years, Ms. Gambino, but I

8  never did that to a Court; and if I did it, I expected full

9  well that the Court would send me out on my tail with that, you

10  know, type of actions by an attorney.  So I never even thought

11  about doing that.  This case you've done it over and over and

12  over again.  The one time that you called and you said you had

13  a bad cold, you didn't say I want to change the issues.  I'm

14  not prepared.  I haven't read.

15        You said, and I'm paraphrasing, I'm on my deathbed because

16  you did have a bad cold, I believe, or at least your voice

17  sounded like that.

18        MS. GAMBINO:  I was very ill at that time, Your

19  Honor.

20        THE COURT:  And I took it to be that way, and I gave

21  you the continuances.  And I know one of my colleagues in this

22  building also had a case with you, and he had expressed

23  disappointment to me also with regards to your being ready and

24  being on time, and I think he gave you a very short continuance

25  on that case.

1        I'll go ahead and continue it, but I am not going to allow

2  this memorandum to control this case.  I have spent numerous

3  hours on this case, and I am willing to look at your memorandum

4  as to why I have to allow this accordion to open up again.  But

5  I am also going to set this matter down for a Rule to Show

6  Cause as soon as this case is over with, or your representation

7  of this case is over with if we get to that point because I

8    probably have expended thousands of dollars in hours preparing
9    for this case because I don't take it lightly either.  This man
10   has a right to have a judge that hopefully is fully informed in
11   this case.  So every time it comes up for sentencing, I'm
12   reviewing the case.  I'm going back through my notes because
13   obviously with time, you start to forget some of the facts and
14   what occurred.  So I go through all of that.  Then you come in
15   the day of sentencing and say, I need a continuance again.
16        So if you want that, I'll give you that.  I'll let you
17   give me a memorandum on that; otherwise, we'll go through
18   today's sentencing as is, and I'll let you talk to your client.
19        Ms. Gambino, in fairness to both of you, if you want to
20   talk privately to him, I can put you in the holding cell.  That
21   way you guys can talk privately.
22             MS. GAMBINO:  I would appreciate that, Your Honor.
23             THE COURT:  Pardon?
24             MS. GAMBINO:  I would appreciate that, Your Honor.
25             THE COURT:  Can you put Mr. Tanner in the holding

1    cell?
2         Ms. Gambino, because I do not want to rush you, and I
3    know, Mr. Nozick, you have another problem, and I'll try to go
4    through that as expeditiously as I can.  I am going to go back
5    to chambers.  That way I'm not out here putting any rush on
6    you.  Okay?
7              MS. GAMBINO:  Okay.  Thank you.
8         (Break.)
9              THE COURT:  Now, Ms. Gambino, have you had an
10   opportunity to confer with your client?
11             MS. GAMBINO:  Yes, I have.

12      THE COURT:  What are you asking the Court?

13      MS. GAMBINO:  Time to file that motion that you

14  outlined.

15      THE COURT:  Well, I'm not sure what motion you're

16  talking about, Ms. Gambino.  That's why I want it outlined

17  specifically as to what you want me to do, and I can tell you

18  specifically what I will do.  I have concerns because I'm not

19  going to want to continue this case.

20      Now, you said that you were having some physical and

21  mental problems.  What I might do, only because if there is

22  that problem, to find out where you want to go.

23      Is that going to be a reason for you to withdraw from this

24  case?  And if you don't withdraw, and you want to continue on,

25  can you do it?  And if you continue on, why shouldn't you be

Page     19

1  bound, and your client, by all of the actions that you've had

2  up until now?

3      MS. GAMBINO:  I'm happy to respond to all of those

4  questions, Your Honor.

5      THE COURT:  That's your client's wish?

6      MS. GAMBINO:  As I understand it, yes, if you would

7  like to ask him directly.

8      THE COURT:  Mr. Nozick, what's your position?

9      MR. NOZICK:  Your Honor, I will defer to the Court.

10  We are ready for sentencing today.  We'll be ready for

11  sentencing on a date set by the Court.

12      THE COURT:  Mr. Tanner, please face this young lady;

13  raise your right hand to be sworn.

14              CHARLES TANNER, DEFENDANT, SWORN

15                      EXAMINATION

16  BY THE COURT :

17    Q.    Mr. Tanner, why don't you bring that microphone close to

18    you.  I want to be able to hear you.  Okay?  Speak up.  You're

19    not going to get me upset by speaking up.  If I don't hear you,

20    then I'm guessing as to what you're saying.

21        Please state your full name.

22    A.    Charles L. Tanner.

23    Q.    And, Mr. Tanner, are you the same defendant that is a

24    defendant in Cause Number 2:04-CR-80?

25    A.    Yes, sir.

                                                         Page    20

1    Q.    Mr. Tanner, you were tried in this court back in November

2    of the year 2006; is that correct?

3    A.    Yes, sir.

4    Q.    And the jury found you guilty at that time?

5    A.    Yes, sir.

6    Q.    You had a different attorney at that point.  I believe his

7    name was Mr. Bopiac.  I can't think of his first name right

8    now.  Is that correct?

9    A.    Yeah.

10    Q.    Okay.  Afterwards you discharged him and hired another

11    attorney; is that correct?

12    A.    Yes, sir.

13    Q.    And her name is Andrea Gambino?

14    A.    Yes.

15    Q.    And she is alongside you?

16    A.    Yes, sir.

17    Q.    This case has been continued numerous times; is that

18    correct?

19    A.    Yes.

20    Q.    And I have advised you and everybody on several occasions

21  that the last continuance would be the last continuance.  It

22  will not be continued any further?

23  A.   Yes.

24  Q.   And the last time that we were here, I think somebody said

25  it was February?

1  A.    February 14th.

2  Q.    February 14th.  I asked you whether you were still

3  satisfied with the counsel, representation, and advice given to

4  you in this case by Ms. Gambino?

5  A.    Yes.

6  Q.    And whether you were agreeable to a continuance?

7  A.    Yes, I was agreeable with a continuance.

8  Q.    Okay.  And I think at that hearing I also said that --

9  A.    The next time you ain't going to be so lenient on me.

10  Q.    Pardon?

11  A.    The next time you wouldn't be lenient on me if I had

12  problems later.

13  Q.    You were going to be stuck with your actions because

14  that's who you wanted as an attorney.

15  A.    Right.

16  Q.    Ms. Gambino is asking for a continuance again today.

17  A.    Yes.

18  Q.    You understand that.

19       And I have advised everyone before that this case was

20  scheduled for sentencing, and I was intending to go forward

21  with it.

22       Now, Ms. Gambino has argued in the alternative, and I'm

23  really confused with that because, one, she wants to get out

24  because of -- she wants a continuance in this matter, and she's

25  also arguing that you should not be bound by her actions, and

1   she doesn't want to see you suffer.

2       Ms. Gambino, I'm trying of paraphrase what you said.

3       She doesn't want to see you suffer because of her actions.

4   A.   Yes.

5   Q.   I'm not sure, one, whether I will let her out or not let

6   her out; two, I'm not sure that if I do let her out, that

7   you're still not bound by her actions or subsequent counsel

8   would be bound by her actions, and; three, whether there's a

9   reason to grant a continuance or to allow her to get out.  Do

10  you understand that?

11  A.   Do I understand that?

12  Q.   Yes.  I'm not saying you agree with it.  I'm just saying

13  do you understand that's what I have advised?

14  A.   Yeah, I understand that.

15  Q.   I have several questions of you.

16      Do you still want Ms. Gambino as your attorney?

17  A.   I need to say something.  Could I say something?

18  Q.   Well, I'm in a little bit of a Catch 22, Mr. Tanner.  I'll

19  let you say whatever you want to say, but I suggest you first

20  talk to her regarding, you know, your rights.  I don't want you

21  to say something that might come back to haunt you later.  I'm

22  just doing that out of caution.

23      You want to talk to your attorney for a second as to where

24  you want to go?  I just don't want you to say something that

25  may hurt you later.

1   A.   Okay.  I'll run that by her first.  It'll be real quick.

2   Q.   Push that button down because I'm going to hear you

3    otherwise.

4         (Off the record.)

5    BY THE COURT :

6    Q.    You talked to your attorney; is that correct?

7    A.    Yes, sir.

8    Q.    Now do you want to say something?

9    A.    My thing is with the continuance part.  When we talked on

10   the 14th, my thoughts was based upon her doing the best for

11   me in this situation.  I don't want to go into my previous

12   lawyer, but some things that occurred in trial that happened

13   with him, I was told to put my trust into my attorney.  I had

14   the right to hire one.  I trusted him.  And, I mean, you was at

15   the trial with me.  But to make a long story short --

16   Q.    Mr. Tanner, I can't go into that right now.  We're only

17   here right now for purposes of sentencing.

18   A.    But basically what I'm saying was for her to --

19   Q.    I assume your client may have a complaint on appeal based

20   upon the actions of your previous attorney, or you may have a

21   request for a new trial based on his actions.

22   A.    Right.

23   Q.    That is not something that I'm going to take up at the

24   sentencing.

25   A.    Right.  But my thing with saying was I wanted her to have

                                             Page      24

1    time to do my sentence memorandum or whatever motion she had to

2    do.  And if it took for me to be sitting for things to get done

3    right, I would rather for her do it right and we handle this

4    now than not even have to go to appeal.

5    Q.    Mr. Tanner, so that you understand it, I can't guarantee

6    what your attorney will or will not do.  I am not privy to your

7    agreements or to what's going on.

8   A.   Right.

9   Q.   I give deadlines under which I expect this case to move.

10   I advised the attorneys.  I advise you as to where I'm going to

11   be going.

12        Now, whether she does something or doesn't do something

13   because of concurrence with you or because her judgment, those

14   that are all different issues.  I can't go into that.

15   A.   Okay.

16   Q.   I do know that when we were here before, no mention was

17   made of bringing different issues up.  No mention was made of

18   wanting to file a different memorandum.  Everybody was advised

19   when you were found guilty to get together with probation, to

20   meet with them regarding the objections, for everybody to give

21   their side regarding the issues on the objections to see if you

22   can work them out; if not, you put them in writing.  If you

23   looked at the presentence report, you'll see where the

24   objection is made, and I think all of them are from the

25   defendant.  You'll see the defendant's position, you'll see the

1   Government's position, and you see the probation officer's

2   position.

3        When I get ready for sentencing, those are the only issues

4   that I'm going to be using for sentencing.  Okay?  Now, that

5   doesn't mean it's set in stone, but there has to be awfully

6   good reason for it; otherwise, Mr. Tanner, I cannot keep, you

7   know, changing the ball because I would never be able to

8   dispose of a case.

9   A.   I understand.

10   Q.   Now, again, you may -- this is something that your

11   attorney can advise you of -- have other rights, time for a

12   motion for a new trial or on appeal if you do go to the Seventh

13   Circuit.  Absolutely your rights.

14        But I do intend to move this case along.  This has been

15   one of my slowest cases.  You were convicted in the year 2006.

16   We're in the year 2008, Mr. Tanner.

17   A.   Right.

18   Q.   And there's reason to go forward with that.

19        Now I'm caught in the dilemma with two different forces.

20   One, you have a right to counsel of your choice unless some

21   certain circumstances occur, but under most cases you're

22   entitled to that.  And I respect that, and I'm not trying to

23   take your attorney away from you.  But you're also bound by the

24   actions of an attorney that you use unless Ms. Gambino gives me

25   some law to the contrary with regards to that.

                                        Page    26


1        So what I'm trying to tell you, even if I give a

2    continuance, it's going to be very limited, and there's no

3    guarantee that you're not going to still be bound by the very

4    same issues that are there because I am not going to give an

5    accordion effect, and I will not be prone to listen to counsel

6    saying, Well, this case has been continued.  Now there's no

7    harm, no foul.  We have additional time.

8        That's not going to happen.  There was a date that was

9    bound, and we're not going to have motions coming in 15 minutes

10   before a hearing in which time I won't have time to review a

11   record or review case law.

12        Mr. Tanner, I have too much respect for you to go out

13   there and give a knee-jerk reaction on something.

14        I have to review.  When people say that the record said

15   something, it's entirely possible that it does say whatever

16   people say, but I look at it.  I even look at my own

17  recollection of what the record is because sometimes we see

18  things in our own mind we believe that certain things were

19  said.  So I go out, as I did today, and I get a transcript of

20  what was said.  So that's the reason why I'm asking you, you

21  know, do you want to continue with Ms. Gambino?  That doesn't

22  mean, you know, if she files a motion to withdraw or where it's

23  going.  I have to know what you want.

24  A.   Yes.  I want to continue with her to being my attorney.

25  \\\

1   Q.   And are you making this decision knowingly and

2   voluntarily?

3   A.   Yes, sir.

4   Q.   Do you have any questions about it?

5   A.   I got a lot of questions, but I guess it's going off of

6   what --

7   Q.   Pardon?

8   A.   I got a lot of questions.

9   Q.   Well, Mr. Tanner, I can ask you to ask her right now.  I'm

10  not going to be prone to listen to -- you know, if you're

11  sentenced to more than what you expect, you can't come back up

12  later and say, well, now I have new objections.

13  A.   Right.

14  Q.   Understand, you know, we don't do it that way.  It's like

15  playing poker.  You can't wait until your hand is lost and say,

16  Now I want to have a new deck.  I want to have a re-dealing of

17  the cards.

18  A.   Right.

19  Q.   Do you have any questions you want to bring to the Court?

20  A.   Let me ask her something.

21          (Off the record.)

22    A.    I'm going to keep my -- I ain't got no questions.

23    Q.    I'm sorry.  You want to keep her?

24    A.    Yeah.  I want to keep her as my attorney, and I don't have

25    no questions.

1    Q.    And you understand that this Court may find that her

2    request for a continuance was not well-founded, and her request

3    to expand or change the issues are not well-founded.  Do you

4    understand that?

5    A.    Yeah.

6    Q.    And I may not allow her to do that.  Do you understand

7    that?

8          You have to answer out loud, Mr. Tanner.

9    A.    Yes.

10    Q.    I'm not trying to poke fun of people, but when you get

11    quiet, I have no answer on the record.

12          Ms. Gambino, assuming for a moment that I do grant the

13    continuance, how long do you need to give me a memorandum with

14    regards to the issues in this case as to why you should

15    continue representing the defendant after having said that you

16    have had some mental problems and physical problems and why you

17    should not be bound by the issues that are here and why the

18    record should be allowed to be changed, and that does not cover

19    the issue of sanctions.

20          I told you, I'm reserving the right to do that, but I'm

21    going to wait for this case to be done before I make any

22    decisions on that.

23          Are you agreeable to that?

24          MS. GAMBINO:  Yes.

25          THE COURT:  Okay.

1          MS. GAMBINO:  I can have that done in two weeks, Your
2     Honor.
3          THE COURT:  Mr. Nozick?
4          MR. NOZICK:  Ten days to respond.
5          THE COURT:  I can't count ten days in two weeks.  So,
6     Ms. Gambino, why don't I give you two weeks from today, which
7     is --
8          THE CLERK:  April 17th.
9          THE COURT:  And two weeks after that, Mr. Nozick,
10    only because I don't want to start, you know, with half-weeks.
11       May 1st?
12         MR. NOZICK:  Yes, Your Honor.  Thank you.
13         THE COURT:  Are there any other issues, Counsel, that
14    you can think of right now that are necessary?  I don't want to
15    keep expanding it, but I would rather get them all now on the
16    table.
17         MS. GAMBINO:  Well, I want to be clear since I --
18         THE COURT:  Ms. Gambino, you have a very soft voice.
19    Mr. Tanner has a soft voice, but yours is even softer than his.
20         MS. GAMBINO:  I would like to be clear about the
21    Court's position with respect to the 3553(a) factors, and if
22    those things need to be done in writing in advance, if
23    witnesses need to be noticed up in advance, I want to be clear
24    on what can be done on the day or how you deal with those.
25         THE COURT:  Ms. Gambino, if I order this case set for

1     sentencing, if you're going to have character witnesses, I
2     would expect you to have them here on that date.

3        Again, I was somewhat disturbed today because you told me
4    that you needed character witnesses today, and after several
5    prompting from the Court, you finally said you didn't have them
6    here, or didn't have all of them here.
7        It's your obligation as an officer of this Court to have
8    all your witnesses present and ready to proceed.
9        This case was not continued, and really my better judgment
10   says not to continue it because I have a feeling the same
11   issues we have are still going to be there even after whatever
12   occurs, but you would have to have your witnesses, or, excuse
13   me.  I have that cold that's going around.  If you and the
14   Government can agree to a proffer, sometimes you can avoid
15   having the witness here under that circumstance; but I will
16   tell you, if it's going to depend on credibility, I can't give
17   you credibility on proffer because I can't see the witness.
18        MS. GAMBINO:  Right.  Absolutely.  What I'm more
19   concerned about is whether you want the 3553(a) arguments in
20   writing or not.
21        THE COURT:  You don't have to have them in writing.
22   If you want me to consider them -- if you think you have very
23   strong 3553(a) arguments, and if you want to give them to me,
24   Ms. Gambino, I welcome them.  But in fairness to myself and in
25   fairness to the opposing attorney, don't give them to me 15

                                              Page      31

1    minutes before a hearing.  I read fast but I'm not that fast of
2    a reader.  And when you give me transcript pages, I don't know
3    that the transcript has been prepared.  I assume that it has.
4    But for me to go out and find the transcript and read, read
5    right before it and read right after it to see if it was taken
6    out of context would certainly take me probably a day with the
7    citations that you gave me.  I know I couldn't do them in 15

8    minutes.  And then if you gave me a citation to a case,

9    depending on who wrote it, if it's a Supreme Court case, that

10    might take me several hours to read because some of them, as

11    you well know, 40, 50, 60 pages in length.  So if you're going

12    to do that, do it with sufficient time so that the Government

13    can get a copy of it, and they may want to respond to some

14    things or file their own memorandum.  You don't have to file.

15    If you want to do it at the time of sentencing, you can argue

16    the 3553(a) issues.  Obviously if you want to make a bigger

17    impact on my mind only because I can digest them better, you

18    can give them to me in writing.  You don't have to do that.

19         MS. GAMBINO:  Would you like those on the 17th

20    along with this other memorandum?

21         THE COURT:  You don't have to give them to me on the

22    17th.  The only thing I don't know is if I deny your motion,

23    I'm not sure how much time I'm going to give you after that.

24        I'm getting ready for I think at least two cases that are

25    four weeks in length, and then there's another case right after

1    that.  So I can think of three cases right now that are set

2    that are going to be lengthy.  And, Ms. Gambino, although my

3    heart is in the right spot, sometimes I can't do two things at

4    one time.  If I'm in trial, that's the most important thing

5    because you have to constantly be alert for all the issues.

6        I can't tell you how long it will be after I make a ruling

7    on the motion.  But, again, Ms. Gambino, I want you to

8    understand that a continuance does not open the issues up.

9         MS. GAMBINO:  I understand that.

10         THE COURT:  And I still need some law from you and

11    argument from you that you say is there that Mr. Tanner is not

12    responsible by what you've done in a case.

13        You can't think of anything else?

14            MS. GAMBINO:  That's all I have, Your Honor.

15            THE COURT:  Mr. Tanner, can you think of anything

16    else you want to address the Court about or ask the Court

17    about?

18            THE DEFENDANT:  No, Your Honor.

19            THE COURT:  Are you satisfied with the record that I

20    made with regard it was knowingly and voluntarily made?

21            MR. NOZICK:  I am, Your Honor.  Thank you.

22            THE COURT:  Is there anything else you can think of?

23            MR. NOZICK:  I have nothing to add.

24            THE COURT:  Counsel, I'll await your memorandums on

25    this matter on or before the days set.

1            MS. GAMBINO:  Thank you.

2        Your Honor, excuse me.  I'm sorry.  Mr. Tanner has asked

3    if the Court would grant him permission to hug his Godmother.

4            THE COURT:  Mr. Tanner, I am not trying to be

5    disrespectful.  Believe me, I understand, you know, the

6    importance of our relatives.  Those are all issues that deal

7    with security, and I yield completely to the marshal service.

8    They may have regulations on that, and I can't break away from

9    those regulations because, and I'm not saying you're going to

10    do anything crazy, but if somebody ever does, they're going to

11    say, Judge, it's because you don't allow us to conduct

12    security.  So I have to yield to whatever the marshals have on

13    a case.  And, again, I'm saying that respectfully.  I'm not

14    trying to be smart about it.  Okay?

15        (Hearing concluded.)

16

17        CERTIFICATE OF REPORTER

18        I, RICHARD D. EHRLICH, a Registered Merit Reporter and

19    Certified Realtime Reporter, certify that the foregoing is a

20    true, complete, and accurate transcript of the proceedings

21    ordered to be transcribed in the above-entitled case before the

22    Honorable Rudy Lozano, in Hammond, Indiana on April 3, 2008

23    _____

      Richard D. Ehrlich, Official Reporter                Date
24

25