IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA,
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| Plaintiff,   ) | |
| v.   ) | |
| ) | No. 2:04-CR-80 |
| ) | Judge Rudy Lozano |
| CHARLES TANNER,   ) | |
| Defendant.   ) | |

*MEMORANDUM OF LAW IN SUPPORT OF A SENTENCE OUTSIDE THE GUIDELINE RANGE*

Defendant CHARLES TANNER, by his attorney Andréa E. Gambino, in response to the Court's request, and in view of the Government's position regarding the appropriate sentence in Mr. Tanner's case, submits the following memorandum of law.

*BACKGROUND*

Based on the offense of conviction, the statutory sentencing range in Mr. Tanner's case is a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. Defendant Tanner's position is that the appropriate sentence in this case is ten years, the statutory mandatory minimum. The Government has taken the position, as of Monday, April 27, 2009, that the appropriate sentence in this case is 25 years. The probation office has calculated an *advisory* guideline range of life imprisonment. The Court has requested briefing in support of its discretion to sentence outside the *advisory* guideline range.

As will be described in detail below, the United States Supreme Court has

1

made it very clear that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States,* 129 S.Ct. 890 (2009)(emphasis in original).  The Seventh Circuit has followed the Supreme Court, finding that the District Court **cannot** require extraordinary reasons, or even good reasons, to deviate from the guidelines under Title 18, United States Code, Section 3553(a).  *United States v. Ross,* 2007 U.S. App. LEXIS 21721 (7th Cir. 2007)(reversing because court required "some kind of good reason" for a below guidelines sentence).

### *THE DISTRICT COURT HAS THE DISCRETION TO SENTENCE BELOW THE ADVISORY GUIDELINE RANGE*

The United States Supreme Court has clarified its holding in *United States v. Booker,* finding that the sentencing guidelines are no longer mandatory, but "now serve as one factor among several that courts must consider in determining an appropriate sentence." *Kimbrough v. United States,* 128 S. Ct. 558, 564 (2007).  The District Court also must give meaning to the "overarching provision" that the district courts "impose a sentence sufficient but not greater than necessary" to achieve the goals of sentencing.  *Kimbrough v. United States,* 128 S.Ct. at 570.

Most recently, the Supreme Court has instructed the lower courts that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. We think it plain from the comments of the sentencing judge that he di apply a presumption of reasonableness to Nelson's guidelines range. Under our recent precedents, that constitutes error." *Nelson v. United States,* 129

2

S.Ct. 890 (2009)(emphasis in original).  In other words, the District Court "**may not** presume that the guidelines range is reasonable." *Gall v. United States,* 128 S.Ct. 586, 596-597 (2007).   Courts of Appeal may not require the district court to find "extraordinary circumstances to justify a sentence outside the guideline range." *Gall v. United States,* 128 S.Ct. at 595.  A district court was reversed for saying that "unless there's a good reason in the [3553(a) factors], the guideline sentence is the reasonable sentence."  *Nelson v. United States,* 129 S.Ct. 890, 891 (2009). *See also, United States v. Ross,* 2007 U.S. App. LEXIS 21721 (7th Cir. Sept. 11, 2007)(reversing for requiring "some kind of good reason" for a below guidelines sentence).

The United States Supreme Court also has held that a District Court may vary from a guideline sentence based on a policy disagreement with a particular guideline - even in an ordinary case.  *Spears v. United States,* 129 S.Ct. 840 (2009). The *Spears* court found that "district courts are entitled to vary form the crack-cocaine guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range." *Id.* at 842.

The Seventh Circuit has upheld significant variances from guideline range sentences, consistent with its view that post-*Booker* "the district court's choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review." *United States v. Demare,* 459 F.3d 791,

3

795 (7th Cir. 2006), *cited in, United States v. Ngatia*, 477 F.3d 496 (7th Cir. 2007). For example, in *Ngatia*, a case involving the importation of heroin, the Court upheld, against the government's cross-appeal, the district court's imposition of an 84 month sentence, when the advisory guideline range in the case was 188-235 months' imprisonment.  The district court found that a sentence below the guideline range was appropriate because Ngatia's incarceration did not incapacitate the drug smuggling organization of which she had been a part, Ngatia was to be deported upon release, she had demonstrated a commitment to reform with her words and actions, she had obtained numerous certificates of achievement by taking nearly every offered class at the Metropolitan Correctional Center, and her good character, as attested to by her friends and family.

In *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007), the government appealed from the imposition of a 70 month sentence in a child pornography case in which the advisory guidelines were 121-151 months.  The government argued unsuccessfully that the sentence was unreasonably low in light of the sentencing factors in Title 18, United States Code, Section 3553(a).  The Court of Appeals disagreed, finding that the district court methodically worked through the statute and ultimately concluded that 70 months sufficiently punished Wachowiak, reflected the seriousness of his offense, promoted deterrence, protected the public, and ensured prompt treatment.  The Court recognized that sentencing discretion is in tension with goals of uniformity and proportionality, but reasonableness review does not provide a means of addressing that balance.  *Id.* at 755.

Similarly, the Court of Appeals has affirmed other non-guideline sentences as long as the district court provides reasons upon which to base its decision. In *United States v. Baker,* 445 F.3d 987, 990 (7th Cir. 2006), the district court imposed a sentence of 87 months where the advisory guidelines were 108-135 months. The district court cited Baker's "crime free" life – he had no prior convictions – and the fact that "a term of imprisonment would probably mean more to him and have a greater impact than on someone who had previous experience being incarcerated," as reasons for imposing a lesser term of imprisonment than what the guidelines advised.

In a more dramatic departure, as part of *United States v. Paladino*, *et al*, the Court affirmed the district court's imposition of a sentence of 180 months imprisonment for defendant Peyton, when the advisory guidelines in his case were 235-293 months. The Court of Appeals found that "we cannot think on what basis a 15-year sentence for Peyton, who was 34 years old when sentenced, could be thought unreasonably short."

Finally, the Supreme Court in *Nelson v. United States,* 555 U.S. ___ (2009), (per curiam) twice sent Nelson's case back to the district court, which had imposed a sentence of 360 months– at the low end of the 360-life guideline – because the district court presumed that a sentence within the applicable guidelines range was reasonable and refused to consider how the various statutory sentencing factors applied in Mr. Nelson's case. The Supreme Court and the Seventh Circuit have made it very clear that the sentencing court **cannot** rely on the guidelines without

5

considering other important sentencing factors and that the guidelines are **not** reasonable in every case.

Other Courts of Appeal, too, have affirmed substantial variances between a guideline sentence and the sentence imposed. For example, the Sixth Circuit in *United States v. Presley,* 547 F.3d 625 (6th Cir. 2008), affirmed the district court when, in a drug case, the district court imposed a sentence of 120 months, instead of the guideline sentence of 360 months, because the co-defendant in the case received a sentence of 96 months for the same conduct, and the court wanted to avoid an unwarranted disparity between co-defendants. *See also, United States v. Polito,* 215 Fed. Appx. 354 (5th Cir. 2007)(upholding sentence of probation where guidelines were 27-33 months); *United States v. Williams,* 435 F.3d 1350 (11th Cir. 2006)(upholding 90 month sentence where guidelines were 188-235).

### *SENTENCING FACTORS ENUMERATED IN 18 U.S.C. §3553(a) SUPPORT A BELOW GUIDELINES SENTENCE IN MR. TANNER'S CASE*

This Court has now heard two days of mitigating evidence in support of imposing a sentence that is well below the guideline calculation of "life imprisonment" proposed in the Presentence Investigation Report.[1] The following factors, unique to Mr. Tanner, support a finding in his case that the guideline sentence is far greater than necessary to serve the purposes of sentencing.

---

[1] Mr. Tanner does not agree that the enhancements proposed by the Presentence Investigation Report are supported by credible evidence, as outlined in the defendant's objections to the Presentence Investigation Report and a supplemental filing, and does not concede that the PSI calculation is correct.

6

Under 18 U.S.C. § 3553(a)(1) the court "shall consider" the nature and circumstances of the offense and the history and characteristics of the defendant. Mr. Tanner is only 28 years old, at the time of the offense, he was 24 years old and had never been in trouble with the law. He has absolutely no criminal history – not even an arrest history, with the sole exception of a misdemeanor disorderly conduct arrest that occurred when he was 17 years old.

Charles Tanner is a boxer – not a drug dealer. He began boxing when he was eight years old. His amateur record was outstanding. Based on seeing him fight on one occasion, an attorney – Mr. Weisman – assembled a group of other professionals and together, they committed to sending Charles to a private Catholic High School and supported his continuing involvement in boxing. Charles did well in school and was a person of whom his teachers and the school administrators were justifiably proud. Charles amateur record was 96 wins and 10 losses over a period of 10 years, from 1988-1998.

At the age of 18 years old, Charles turned professional with the assistance of attorney Tom Lewis, who also testified about the type of person he saw in Charles – not only a disciplined and talented boxer – but a generous, big-hearted person. Charles was the first male in his family to graduate from high school and to begin taking college courses. Not only was he personally successful, but he supported his family and was working to lift them out of poverty. Charles was entrepreneurial, worked hard to sell tickets to his fights, and helped other businesses promote their products.

7

Earl Bell, Marty Jackobowski, and Feliciano Cruz all testified about the rigors of a boxer's training routine and schedule. As a professional boxer Charles fought 19 fights and had a perfect record, including 11 knockouts. The last fight before his arrest was televised on ESPN and he was poised to become a world champion fighter. As Mr. Weisman testified, this was apparent from the time Charles was still in high school and went to box for Angelo Dundee, the trainer of such boxing greats as Sugar Ray Leonard and Mike Tyson.

Pastor Shelby and Deacon William Coker attested to Charles' spiritual journey and involvement in the church. This, too, began long before Charles became involved with the criminal justice system and persists into the present day. Charles brought his family and followers to the church, believing that all could benefit from his spiritual path as well as his professional path.

Charles also is the committed and loving father of Charles, Jr., who is only just beginning his school life and is equally attached to his father. Charles and Jacquise were planning to be married in 2004 and were only prevented from doing so by Charles' arrest. Bronwyn Norman, Charles' sister-in-law, testified about the close nature of Charles' relationship with his son and the great sense of loss the young boy feels without his father.

Pursuant to 18 U.S.C. §3553(a)(2)(A), the court must also consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Respect for the law means that the sentence must be perceived to be fair. In this case, a sentence of life imprisonment

8

for a person of Charles Tanner's background and character is excessive in the extreme. A life sentence is punishment for the worst offenders, who are beyond rehabilitation or redemption and must be kept from society because they are unable to live lawfully within society. This is clearly not the case with Charles Tanner. In no society would it be considered fair or just to send a first offender to prison for the rest of his life.

Mr. Tanner does not need any more time in custody to teach him that he cannot become involved with illegal activity or those who would involve him in such activity. He has talent, a profession, discipline, determination, and a broad community of supporters to help him get back on his feet. He is a person who will use his experience to help others – as attested to by each witness who testified on his behalf.

The court must also consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Defendants who typically face life sentences are those who have multiple criminal convictions, have been to prison and learned nothing from the experience, or who have committed murder. Charles Tanner is not the incorrigible recidivist who must be kept away from society for the rest of his life.

As discussed above, the law does not require this Court to impose the unreasonable sentence of life imprisonment in this case. Nothing in Charles Tanner's background, history, character, or the nature of the offense warrants such a sentence. The law does not permit this court to presume that the guideline

sentence in this case is reasonable. Every other factor presented to the court suggests the contrary – the guideline sentence in this case is extreme and unreasonable.

WHEREFORE, defendant CHARLES TANNER, respectfully requests that this Court impose a sentence of ten years, or, in the alternative, no greater than the 25 year sentence proposed by the government.

DATE:     May 7, 2009          Respectfully submitted,

                               By:   s/Andréa E. Gambino
                                     Attorney for Charles Tanner


Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312) 322-0014

10

CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

David J. Nozick, Esq.
Assistant United States Attorney

and I hereby certify that I have mailed by United State Postal Service, facsimile, or hand-delivery the document to the following non-CM/ECF participants: N/A.

DATE:   May 7, 2009        Respectfully submitted,

By:   s/Andréa E. Gambino
       Attorney for Charles Tanner

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014